THE HALSEY.[1]

*(Circuit Court, E. D. Pennsylvania. April 22, 1886.)*

1. COLLISION—DAMAGES.
    A vessel rightfully occupying a position in a dock, to which she has been assigned by the superintendent, is not responsible for damages suffered by another vessel which retained her position after she was bound to change it, and could have done so with safety. That this change of position must have been effected at night is no excuse, because mere inconvenience does not constitute a sufficient reason for assuming an avoidable risk.

2. PORT REGULATIONS.
    Port regulations, when made by a competent tribunal, such as the port-wardens of the port of Philadelphia, are binding upon all parties; and when their observance is practicable, and does not involve any serious or unusual temporary danger, obedience to them is imperative.

In Admiralty.
*A. L. Wilson* and *John G. Johnson*, for libelant.
*Curtis Tilton* and *Henry Flanders*, for respondent.

McKENNAN, J. The injury complained of by the libelant resulted from the jamming or squeezing of the barge Halsey by the schooner Jno. A. Hall in the dock at piers Nos. 1 and 2, Port Richmond. Three vessels were in the dock: the two named, and the Mellon. The Halsey was in the dock for the purpose of loading, and this was completed late in the afternoon of the day. The Jno. A. Hall was seeking a berth in which to load, and was directed by the pier master to move in between the Halsey and the Mellon. This she was unable to do before the tide rose, but about 9 : 30 in the evening she was able to move to the position assigned. There was then sufficient water in the dock for the three vessels to lie abreast, and this would continue to be the case until high tide was reached, which was some

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

hours after the Hall took her place. When the tide fell, there was danger of crowding on account of the diminished width of the water. Of this danger the master of the barge was warned, and had been previously ordered by the superintendent of the wharf to haul astern of the schooner. After the Halsey was fully loaded, and until the tide ebbed, it was practicable for her to move astern of the Hall, and thus avoid all danger of crowding, and might have been moved at the rear end of the wharf, or across the end of it, without appreciable danger to her from passing vessels.

By the regulations of the port-wardens of the port of Philadelphia it is made the duty of vessels not taking in or discharging cargo along-side of a wharf to make a way for and permit any vessel that wants to load or unload cargo to come inside next to the wharf, and the superintendent of the wharf to assign to vessels their proper places in the dock. By these regulations the duties and rights of the parties are clearly defined, and they were established by a tribunal upon which expressly authority was conferred by law to enact them. They were therefore binding upon the parties. The learned judge of the district court did not hold to the contrary. He asserts, what is certainly true, that these regulations are to have a reasonable construction and application. If their observance was practicable, and did not involve any serious or unusual temporary danger, the duty of the libelant to obey them was imperative. Nothing short of satisfactory proof of these conditions will excuse an omission to perform this duty. But I do not find such proof in this case. On the contrary, it seems to me to preponderate in favor of the hypothesis that the Halsey could have been moved, during the flood-tide, to a position astern of the Hall, and that she could have been there moored without exposing her to any serious danger. That this service must be performed late at night will not excuse her, because mere inconvenience does not constitute a sufficient reason for voluntarily assuming an avoidable risk, of whose dangerous character she was distinctly warned and fully aware. While, therefore, the Jno. A. Hall was rightfully in a position to which she had been assigned, and the Halsey wrongfully retained hers, when she might safely and was bound to change it, she cannot justly impose the consequences of her own delinquency upon the respondent.

The libel is therefore dismissed, with costs.